**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

ADEL A. AL-KAZAZ, an individual,     )
                                     )
                    Plaintiff,       )
                                     )
vs.                                  )   Case No.  13-CV-62-TCK-TLW
                                     )
UNITHERM FOOD SYSTEMS, INC.,         )
                                     )
                    Defendant.       )

**OPINION AND ORDER**

Before the Court is Defendant Unitherm Food Systems, Inc.'s Motion for Summary Judgment and Supporting Brief (Doc. 19).

**I.     Background**

The following facts are either undisputed or construed in a light most favorable to Plaintiff. Plaintiff Adel Al-Kazaz ("Plaintiff"), a male of Iraqi descent, began working for Defendant Unitherm Food Systems, Inc. ("Defendant") on December 21, 2010.  Defendant produces thermal food processing equipment and systems.  Plaintiff worked as a welder under the supervision of Jeff Hefley ("Hefley").

The events giving rise to Plaintiff's claims occurred during April and May 2011.  Plaintiff contends his co-worker, Wade Hall ("Hall"), referred to Plaintiff as a "camel jockey" outside Plaintiff's presence sometime in April 2011.  (A. Al-Kazaz Depo., Ex. 2 to Def.'s Mot. for Summ. J., at 78:3-79:8.)  On or about May 2, 2011, co-worker Ty Deeringwater ("Deeringwater") referred to Middle Eastern men as "ragheads" in a conversation with Plaintiff about the capture of Osama Bin Laden.  Plaintiff testified that Deeringwater "said you from around the area, I said no, I'm originally from Iraq, I'm not from Afghanistan.  And he said we should go there and kill all these mother ragheads, mother – motherfucker raghead."  (*Id.* at 98:11-17.)  On or about May 23, 2011, Plaintiff's co-worker Rick Haak ("Haak") called Plaintiff a "sand nigger" while the two were

working.  (A. Al-Kazaz Depo., Ex. 2 to Def.'s Mot. for Summ. J., at 87:11-89:11.)  When Plaintiff told Haak that he found the comment offensive, Haak said "I don't mean nothing [sic] by it."  (*Id.* at 89:1-9.)  Plaintiff reported Haak's comment to Hefley. (Employee Corrective Action Report, Ex. 1.4 to Def.'s Mot. for Summ. J.)

Defendant terminated Plaintiff on February 7, 2012.  Defendant cited a violation of Defendant's Personal Cell Phone Policy as the reason for Plaintiff's termination.  On February 25, 2012, Plaintiff submitted an intake questionnaire to the EEOC, which the EEOC received on March 1, 2012.  Plaintiff filed his charge with the EEOC on June 19, 2012, alleging the three incidents of harassment involving Hall, Deeringwater, and Haak.  In his Complaint, Plaintiff alleges two claims for relief: (1) racially hostile work environment, and (2) intentional infliction of emotional distress. Defendant seeks summary judgment on both of Plaintiff's claims.[1]

## II.  Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id*.  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party seeking to overcome a motion for summary judgment must also make a showing

---

[1] Plaintiff does not allege any claim for wrongful termination or retaliatory discharge. Out of an abundance of caution, Defendant moved for summary judgment on any such claims. Plaintiff failed to respond to this aspect of Defendant's motion, further demonstrating that Plaintiff does not assert any claims for wrongful termination or retaliatory discharge.

sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

### III.   Hostile Work Environment Claim

Plaintiff alleges Defendant maintained a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  "Title VII proscribes discriminatory hiring as well as employment practices that permeate the workplace with 'discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Tademy v. Union Pacific Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also* 42 U.S.C. § 2000e-2(a)(1) (making it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to this compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ").  Defendant argues it is entitled to summary judgment on the hostile work environment claim on two grounds: (1) untimeliness, and (2) lack of severity or pervasiveness of the alleged harassment.[2]

#### A.   Timeliness

Defendant contends Plaintiff failed to timely file a charge with the EOOC and seeks summary judgment on Plaintiff's hostile work environment claim on that basis.  Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC or a state agency with authority to investigate employment discrimination claims.  42 U.S.C.

---

[2] Defendant does not dispute Plaintiff's ability to prove that the comments were unwelcome and based on Plaintiff's race/national origin but challenges Plaintiff's ability to prove that the alleged harassment was sufficiently severe or pervasive to alter the conditions of his employment.

§ 2000e-5(e)(1); *see also Riley v. Tulsa County Juvenile Bureau*, 421 F. App'x 781, 783 (10th Cir. 2010) (citing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005)). Because Oklahoma is a deferral state,[3] a plaintiff has 300 days from the date of the alleged unlawful conduct to file a charge. *Riley*, 421 F. App'x at 783.

Applying the 300-day requirement to hostile work environment claims has "proven problematic," because hostile work environment claims are "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Tademy*, 614 F.3d at 1138-39 (internal quotation marks omitted) (quoting *Duncan v. Manager, Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005); and *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)). Accordingly, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 1139.

Plaintiff alleges the incidents of harassment occurred in April 2011, on May 3, 2011, and on May 23, 2011. On March 1, 2012, the OHRC received Plaintiff's intake questionnaire, which provided information regarding all three incidents. (Ex. 9 to Def.'s Mot. Summ. J.) Plaintiff did not file a charge with the EEOC until June 19, 2012.

The Court concludes that Plaintiff's intake questionnaire constitutes a charge for purposes of the 300-day clock. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (finding an intake questionnaire to constitute a charge where the filing, taken as a whole, could be "construed as a request by employee for agency to take action to vindicate employee's rights"). The intake

---

[3] "Deferral state" refers to a state "in which a state agency has the authority to investigate employment discrimination claims. The Oklahoma Human Rights Commission ("OHRC") has such authority." *Riley*, 421 F. App'x at 783, n.1.

questionnaire provided information regarding the three incidents and indicated that Plaintiff wanted to "file a charge of discrimination." (Ex. 9 to Def.'s Mot. Summ. J. at 4.) Accordingly, all incidents that occurred 300 days before March 1, 2012 – the date the OHRC received Plaintiff's intake questionnaire – were timely filed.

Under the statutory scheme, the May 23, 2011 incident was within 300 days of the receipt of Plaintiff's intake questionnaire. Therefore, Plaintiff's charge was timely filed.[4] In addition, the Court may consider the other incidents falling outside the statutory period. *Moody v. Okla. Dep't of Corrections*, 879 F. Supp. 2d 1275, 1283 (N.D. Okla. 2012) ("[S]o long as one act contributing to the hostile work environment took place inside the 300-day filing period, *any* acts outside the period may be considered to complete the history of acts comprising the hostile environment").

### B.   Severity/Pervasiveness of Incidents

To survive summary judgment on a claim alleging a racially hostile work environment, a plaintiff must prove that "a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and that the victim was targeted for harassment because of . . . race or national origin." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (internal quotation marks omitted) (quoting *Morris v. City of Colo. Springs*, 666 F.3d 654, 663-64 (10th Cir. 2012)). The conduct in question must be judged by both an objective and a subjective standard; this "dual standard asks both whether the plaintiff was offended by the work environment and whether a reasonable person would likewise be offended." *Id.*

---

[4] Defendant acknowledges that if the intake questionnaire were to be construed as a charge, the May 23, 2011 incident falls within the scope of the 300-day limitation and should be considered by this Court

To determine whether a workplace environment rises to the level of hostile, courts look at the totality of the circumstances and consider factors such as: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is "physically threatening or humiliating, or a mere offensive utterance;" and (4) whether it unreasonably interferes with an employee's work performance." *Morgan*, 536 U.S. at116. "The run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012). Therefore, where only isolated incidents are alleged, courts require the conduct to be "especially egregious or extreme." *Id.* at 667.

> To establish a racially hostile work environment, . . . plaintiffs must prove more than a few isolated incidents of racial enmity. Casual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to [Title VII]. Instead, there must be a steady barrage of opprobrious racial comment. Title VII is violated only where the work environment is so heavily polluted with discrimination as to destroy the emotional and psychological stability of the minority employee.

*Hicks v. The Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987) (internal quotation marks and citations omitted).

Plaintiff's hostile work environment claim revolves around the three incidents that occurred in 2011. These are the only incidents of harassment Plaintiff claims occurred during the fourteen-month period in which Defendant employed Plaintiff. Although the comments made by his co-workers were undoubtedly racially insensitive and offensive, Plaintiff has not demonstrated that the harassment was so severe or pervasive as to create a hostile work environment. Instead, Plaintiff has shown only three isolated incidents involving different co-workers over a fourteen-month period, which is not sufficient to establish a hostile work environment. *Id.*; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n.1 (1998) (holding that a hostile work environment claim must be supported by incidents of harassment that are "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive . . . .") (internal quotation marks omitted)

(quoting *Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)); *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (finding two overtly racial remarks by co-workers, including use of "nigger" and references to Ku Klux Klan, during term of employment insufficient to establish hostile work environment).

In addition to the relative infrequency of the comments, neither the content nor the context of the derogatory statements support a finding of severe or pervasive harassment. The conduct by Plaintiff's co-workers was not especially egregious or extreme. *See Morris*, 666 F.3d at 667 (citing cases involving physical violence as examples of especially egregious or extreme harassment). Although Derringwater referenced killing "ragheads" in Afghanistan, such comment cannot reasonably be construed a physical threat to Plaintiff, particularly since Deeringwater allegedly distinguished between Afghanistan and Iraq before making his remark. Haak called Plaintiff a "sand nigger" to his face, but Haak apparently said "I don't mean anything by it" when Plaintiff said he found the comment offensive. The third remark involved the use of "camel jockey" by Hall outside of Plaintiff's presence. These incidents, while troubling, are not the type of egregious or extreme harassment that is actionable under Title VII.

Moreover, Plaintiff testified that his conduct at work essentially remained unchanged after the alleged incidents.

> Q. Let's go back to the effect that you're saying Wade's comment had on you. You said you tried to keep to yourself. Earlier you said that generally at work you came in to do your work and you didn't interact a whole lot; is that true?
> A. Yeah, that's true. . . .
> Q. Did that continue, that sort of normal course of behavior continue after Wade's comment?
> A. What do you mean?
> Q. That you would talk to people if they came up to you?
> A. If they came up to me, yeah.
> Q. But generally you're there to do your work?
> A. Yes.

(A. Al-Kazaz Depo., Ex. 2 to Def.'s Mot. for Summ. J., 84:21-85:18.) Plaintiff, therefore, has failed to create a genuine dispute of material fact as to whether any alleged discrimination was "sufficiently severe or pervasive such that it altered the terms or conditions of his employment and created an abusive working environment." *Morris*, 666 F.3d at 669. Considering the totality of the circumstances, a rational jury could not find that the incidents rise to the level of a hostile work environment, and Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

### IV. Intentional Infliction of Emotional Distress

Plaintiff also alleges he is entitled to relief under the common law tort of intentional infliction of emotional distress ("IIED"). In general, Oklahoma courts follow the approach of the Restatement (Second) of Torts § 46(1) (1965). *Daemi v. Church's Fried Chicken*, 931 F.2d 1379, 1387 (10th Cir. 1991). "[T]o establish a prima facie case of IIED, plaintiff must demonstrate: (1) that the tortfeasor acted intentionally or recklessly; (2) that the tortfeasor's conduct was extreme and outrageous; (3) that plaintiff actually experienced emotional distress; and (4) that the emotional distress was severe." *Id.* (applying Oklahoma law). As a threshold matter, a court should determine whether the conduct satisfies the extreme and outrageous standard as a matter of law. *Id.* Conduct satisfies this standard where "a reasonable person could find that the conduct is so offensive as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing Restatement (Second) of Torts § 46 cmt. h).

Plaintiff contends that Defendant and its employees intentionally or recklessly inflicted severe emotional distress on him by calling him derogatory names based on his national origin and discriminating against him. Plaintiff's allegations create a question under the extreme and outrageous standard. However, even assuming a reasonable person could find that the alleged

8

harassment satisfies the extreme and outrageous standard, Plaintiff has offered insufficient evidence to show that he experienced severe emotional distress.

A plaintiff's distress must be so severe that "no reasonable person could be expected to endure it." *Id.* (citing Restatement (Second) of Torts § 46 comment j). Plaintiff testified that only that he had experienced some stress but had not had any other problems.

> Q. Okay. Have you had any physical problems as a result of stress or anxiety?
> A. Well, just like - - I mean, you know, like when that happened, you know, over and over and over, you know, it's not something you really, you know, be happy about. I mean, you get stressed, but what are you going to do? What are you going to do? . . . But, I mean, it affect me but I didn't show it, you know, just like I don't have to Express [sic], I didn't show it, you know. I mean, I try to keep cool and keep calm and try the best I can, you know.
> . . .
> Q. Okay. Since February 2012, have you had any physical problems  - -
> A. No.
> Q. - - because of stress?
> A. No.
> Q. Okay. And - -
> A. The only thing - - the only thing, just like I couldn't find a job.

(A. Al-Kazaz Depo., Ex. 2 to Def.'s Mot. for Summ. J., at 208:20-209:21.) Plaintiff offered no evidence that he experienced any shock, illness, or other bodily harm or that he visited any medical professional for his distress. Accordingly, the evidence offered by Plaintiff of his emotional distress is not sufficient under Oklahoma law. Defendant is entitled to summary judgment on Plaintiff's IIED claim.

## VI. Conclusion

Defendant Unitherm Food Systems, Inc.'s Motion for Summary Judgment (Doc. 19) is GRANTED.

**IT IS SO ORDERED** this 11th day of April, 2014.

*Terence Kern*
**TERENCE KERN**
**United States District Judge**

9